**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN TEXTILE COMPANY, INC., | ) | |
| a Pennsylvania Corporation | ) | |
| 10 North Linden Street | ) | |
| Duquesne, Pennsylvania 15110 | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | |
| HOLLANDER SLEEP PRODUCTS, LLC | ) | **JURY TRIAL DEMANDED** |
| a Delaware Corporation | ) | |
| 6501 Congress Avenue, Suite 300 | ) | |
| Boca Raton, Florida 33487 | ) | |
| | ) | |
| *Defendant.* | ) | |

## COMPLAINT

Plaintiff American Textile Company, Inc. ("ATC" or "Plaintiff"), by and through its undersigned counsel, H. Jay Spiegel & Associates and Cohen & Grigsby, P.C., files this Complaint.

1.    ATC is a well-known and highly regarded manufacturer and distributor primarily of bedding products with a particular emphasis on pillows, pillow covers, mattress covers, and mattress pads.  Plaintiff commenced business in 1925 and has conducted business in the Pittsburgh metropolitan area continuously for over 90 years.  ATC has established itself as a preeminent player in the bedding industry, and it works vigorously to protect its hard-earned reputation, including by respecting the intellectual property rights of others.  Plaintiff sells a hypoallergenic bed pillow under the trademark "just home™" (hereinafter referred to as "the ATC pillow").

2.      Recently, Hollander Sleep Products, LLC ("Hollander" or "Defendant") sent a letter to Plaintiff alleging that ATC's pillow infringes Hollander's U.S. Patent No. D507,920 ("the '920 patent").  Hollander demanded that ATC take seven enumerated steps to cure the alleged infringement, including that ATC cease manufacturing the ATC pillow.

3.      ATC believes the ATC pillow does not infringe the '920 patent.  Furthermore, ATC believes the '920 patent is invalid.

4.      Hollander's above-mentioned letter constitutes an affirmative act to enforce Hollander's patent rights.  Conversely, ATC contends that it has the right to manufacture and sell the ATC pillow.  Hollander's letter thus has created an actual controversy between the parties that is ripe for adjudication by this Court.  Accordingly, pursuant to 28 U.S.C. § 2201(a), ATC files this Complaint seeking a declaration from this Court that the '920 patent is invalid, and, even if valid, is not infringed.

## PARTIES

5.      Plaintiff is a Pennsylvania corporation with its principal place of business located at 10 North Linden Street, Duquesne, PA 15110.

6.      Upon information and belief, Defendant is a Delaware corporation having a place of business at 6501 Congress Avenue, Suite 300, Boca Raton, Florida 33487.

## JURISDICTION AND VENUE

7.      This is an Action pursuant to 28 U.S.C. § 2201(a) seeking a declaratory judgment that the '920 patent is invalid, and, even if valid, is not infringed by ATC's pillow.

8.      This Court has jurisdiction over the subject matter of this Action under 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over Defendant because pursuant to the Pennsylvania Long-Arm statute, 42 Pa. Cons. Stat. § 5322 (2015), and on information and belief, Defendant has substantial and continuous business contacts within the Commonwealth of Pennsylvania and sells or offers to sell goods within the Commonwealth of Pennsylvania.

10.     Venue properly lies in this district under 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Namely, Defendant has alleged that Plaintiff has committed acts of patent infringement within this district.   Alternatively, venue is proper in this district under 28 U.S.C. § 1391(c) because Defendant is subject to personal jurisdiction in this district with respect to this action.   Moreover, venue is proper in this district under 28 U.S.C. § 1400(b) because Defendant is a corporate defendant that is subject to personal jurisdiction in this district.

## FACTS

### I.  The ATC Pillow

11.     Plaintiff manufactures and distributes the ATC pillow.

12.     Exhibit 1 shows a side view of the ATC pillow. The sides of the ATC pillow are substantially identical to one another.  Each side of the ATC pillow is longer than the respective ends of the ATC pillow.  Each side includes a section that is somewhat elliptical in shape and stitched into the side of the pillow by simple unadorned stitching.  This feature includes arcuate top and bottom edges that converge to meet at the extreme ends of each side of the pillow.

13.     Exhibit 2 shows an end view of the ATC pillow.  The ends of the ATC pillow are substantially identical to one another.  Each end of the ATC pillow is shorter than the respective sides of the ATC pillow.  Each end has a single line of unadorned stitching connecting a top portion of the pillow with a bottom portion of the pillow.

-3-

## II.  The Hollander Pillow Covering

14.     Upon information and belief, on February 26, 2004, Defendant caused an application to be filed in the U.S. Patent and Trademark Office seeking a Design patent for a pillow covering.  Upon information and belief, the application was assigned Serial No. 29/200,339.

15.     Upon information and belief, Hollander's 29/200,339 application issued as U.S. Patent No. D507,920 (the '920 patent) on August 2, 2005.  A copy of the '920 patent is at Exhibit 3.

> A. *The Patent For The Hollander Pillow Covering Does Not Cover Any Particular End-to-Side Ratio.*

16.     The '920 patent purportedly protects a pillow covering as shown in the five figures included in the '920 patent.  Those drawings, however, show broken lines that are described in the '920 patent as depicting features "for illustration purposes only."  The drawings make clear that those features "form no part of the design sought to be patented."  Accordingly, the only features covered by the '920 patent are the details of the side edges of the pillow covering.  Those side edges are best seen in Figures 1–3 of Exhibit 3.

17.     Although the figures, particularly Figures 1 and 4, depict the sides of Hollander's claimed pillow covering as longer than the ends, the ends are in broken lines and form no part of the claimed design.  Accordingly, the features claimed in the '920 patent are not necessarily sides longer than ends of a pillow covering.  In fact, the reverse could also be true, and the sides and ends also could be of equal respective lengths.

*B. The Elliptical Sides Of The Hollander Pillow Covering Are Addressed By Prior Art.*

18.     The side edges of the pillow covering of the '920 patent are elliptical in shape and feature a periphery consisting of a continuous cord that extends outwardly from the side edges of the pillow, which also is clearly seen in Figures 4 and 5 of Exhibit 3.  Within the peripheral cord, the shading suggests a fabric located therein.

19.     During the course of the prosecution of the '920 patent, the following prior art references were cited:   U.S. Patent Nos. 1,262,510 to Kelly; 2,029,608 to Buchman; 2,217,999 to De Woskin; 3,148,389 to Lustig; 3,924,283 to Shave; D283,963 to Rowland; 5,084,928 to Skillington; 5,953,777 to Buck; and D466,751 to Coats et al.  These prior art references are collectively included in Exhibit 4.

20.     Plaintiff is aware of additional prior art that was not cited during the prosecution of the '920 patent, as follows:   U.S. Patent Nos. 3,530,020 to Liebermann; 6,978,502 to Calagui; D283,963 to Rowland; D316,353 to Dobson; D327,802 to Downing; D335,997 to Castronovo; D338,798 to Grzybinski; D376,502 to Bonaddio et al.; D385,740 to Palmer; D426,096 to Palmer; D429,438 to Palmer; D439,099 to Erickson; D439,464 to Shuster; and D482,923 to Gaines.  This prior art is reproduced in Exhibit 5.

21.     As evidenced by the prior art cited in paragraph 20 above, it is extremely common for an end or side of a pillow or pillow covering to be elliptical in shape.  The Liebermann patent, in particular, shows a pillow covering, identified by reference numeral 34 in Figure 7 thereof, that has an elliptical side longer than the ends of the pillow covering.

22.     Moreover, the Castronovo patent, particularly, Figures 2 and 4 thereof, makes it clear that the use of a cord peripheral to an elliptical surface of a pillow or pillow covering is well known.

23.     Finally, with respect to the Coats et al. patent referred to in paragraph 19 above and made of record during the prosecution of the '920 patent, Figures 1, 5, and 6 thereof show a cord about the periphery of an elliptical surface on a pillow.  Similarly, the Shave patent referred to in paragraph 19 and made of record during the prosecution of the '920 patent teaches a cord surrounding the periphery of an elongated surface of a cushion that has arcuate ends as best seen in Figure 1of the Shave patent.

24.     The combinations of Liebermann and any one of Castronovo, Shave, or Coats et al. were never considered by the Primary Examiner during the course of the prosecution of the application that matured into the '920 patent.  Each of these patents has an effective date more than one year prior to the effective date of the '920 patent.

25.     The continuous cord about the periphery of each of the elliptical sides of the pillow covering claimed in the '920 patent has a dimensional height as clearly seen, for example, in Figures 4 and 5 of the '920 patent.  This is an essential feature of the invention claimed in the '920 patent.  No such feature is found or included in the ATC pillow.

**III.  The Instant Dispute**

26.     On April 6, 2017, Defendant's counsel mailed a letter to Plaintiff with certain attachments, all of which are included in Exhibit 6.  In this letter, Defendant alleged that the ATC pillow infringes the '920 patent:  "It has come to our client's attention that your company is manufacturing a pillow with gusseted side walls having a design that infringes the design covered by the '920 Patent."  Defendant further demanded that Plaintiff express its assent to seven enumerated, "non-negotiable" terms by April 14, 2017.

-6-

## COUNT I   (DECLARATION OF INVALIDITY OF THE '920 PATENT)

27.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 26 of its Complaint as if fully set forth herein.

28.     The claim of the '920 patent (Exhibit 3) is depicted in Figures 1–5 of that patent. Although the drawing figures, particularly Figures 1 and 4, depict the sides of the claimed pillow covering as longer than the ends, the ends are in broken lines and form no part of the claimed design.  Accordingly, the features claimed in the '920 patent are not necessarily sides longer than ends of a pillow covering.  In fact, the reverse could also be true, and sides and ends also could be of equal respective lengths.

29.     The Liebermann and Castronovo patents included in Exhibit 5 and the Shave and Coats et al. patents included in Exhibit 4 (the latter two of which were cited of record during the prosecution history of the '920 patent) all have effective filing dates more than one year prior to the effective filing date of the '920 patent.

30.     Liebermann teaches a pillow covering, identified by reference numeral 34, that has elliptical sides longer than the ends thereof as clearly seen in Figure 7 thereof.  Castronovo, Shave, and Coats et al. teach sides of a pillow surrounded by a raised cord.  In Coats et al. and Castronovo, the cord surrounds an elliptical surface.

31.     Under 35 U.S.C. § 103, it would have been obvious to one of ordinary skill in the art at the time the invention claimed in the '920 patent was made to provide the elliptical sides of the Liebermann pillow covering with a peripheral raised cord in light of the teachings of any one of Castronovo, Shave, or Coats et al.  Accordingly, the '920 patent is invalid.

32.     Since an invalid patent cannot be infringed as a matter of law, a judicial declaration both is necessary and appropriate so that the Plaintiff may ascertain its rights to manufacture, import, market, use, sell, or offer to sell the ATC pillow.

33.     As a direct result of the letter from Defendant's counsel (Exhibit 6), a substantial and continuing controversy of sufficient immediacy and reality exists, constituting as a valid and justiciable controversy between the parties that warrants the issuance of a declaratory judgment under 28 U.S.C. § 2201(a) and Fed. R. Civ. P. 57 that the '920 patent is invalid and therefore, Plaintiff is permitted to continue manufacturing, importing, marketing, using, selling, or offering to sell the ATC pillow.

## COUNT II   (DECLARATION OF NON-INFRINGEMENT OF THE '920 PATENT)

34.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 33 of its Complaint as if fully set forth herein.

35.     In determining whether a Design patent is infringed, the Court is required to apply the ordinary observer test espoused by the Federal Circuit in *Egyptian Goddess, Inc. v. Swisa Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (*en banc*).  In so doing, the Court must determine whether an ordinary observer would deem the design of the ATC pillow to be substantially similar to the design illustrated in the '920 patent such that the observer would be deceived into purchasing the ATC pillow instead of the pillow illustrated in the '920 patent.  In so doing, the ordinary observer must take into account the prior art.

36.     The prior art included in Exhibits 4 and 5 clearly shows that pillows having a general elliptical shape when viewed from the profile are well known.  Such a general elliptical shape would therefore not constitute a difference to which the ordinary observer would be drawn.  Instead, the difference to which an ordinary observer would be drawn would include the

-8-

peripheral cord that stands out from the side surfaces of the pillow claimed in the '920 patent. The ATC pillow does not have any such cord.  Rather, the side surfaces of the ATC pillow merely include a somewhat elliptical surface stitched into top and bottom faces of the pillow with ordinary unadorned stitching and devoid of a raised periphery.

37.     As such, Plaintiff submits that the ordinary observer would not deem the ATC pillow to be substantially similar to the pillow covering of the '920 patent.  Accordingly, the ATC pillow does not directly infringe the '920 patent.

38.     The ATC pillow also does not infringe the '920 patent under the Doctrine of Equivalents.  To find Doctrine of Equivalents infringement, the ATC pillow must be substantially similar to the patented design.  The Doctrine of Equivalents cannot be used to expand the scope of a patent claim to cover what is in or what would be obvious in light of the prior art.  The prior art included in Exhibits 4 and 5 amply demonstrates that an unadorned elliptical side wall is a common feature of a pillow or pillow covering.  Accordingly, the ATC pillow does not infringe the '920 patent under the Doctrine of Equivalents.

39.     Because the ATC pillow does not infringe the '920 patent, a judicial declaration both is necessary and appropriate so that the Plaintiff may ascertain its rights to manufacture, import, market, use, sell, or offer to sell the ATC pillow.

40.     As a direct result of the letter from Defendant's counsel (Exhibit 6), a substantial and continuing controversy of sufficient immediacy and reality exists, constituting as a valid and justiciable controversy between the parties that warrants the issuance of a declaratory judgment under 28 U.S.C. § 2201(a) and Fed. R. Civ. P. 57 that the '920 patent is not infringed by the ATC pillow and therefore, Plaintiff is permitted to continue manufacturing, importing, marketing, using, selling, or offering to sell the ATC pillow.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF respectfully prays that:

(1)   The Court enter judgment:

    (a)   Declaring that the '920 patent is invalid and unenforceable.

    (b)   Alternatively, if the Court finds the '920 patent to be valid and enforceable, declaring that it is not infringed by the ATC pillow.

    (c)   Preliminarily and permanently enjoining Defendant and its officers, directors, employees, servants, agents, affiliates, attorneys, and all others acting in privity or in concert with any of them, or their parents, subsidiaries, divisions, successors, or assigns from asserting, including filing or prosecuting any civil action or threatening to assert, any charge of infringement of the '920 patent against Plaintiff or any of its manufacturers, distributors, customers, potential customers, or users of the ATC pillow.

    (d)   Declaring this to be an exceptional case and awarding Plaintiff its costs and expenses in this Action including reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

    (e)   Granting Plaintiff such other and further relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,


/s/ *Christina Manfredi McKinley*


H. Jay Spiegel                                    Christina Manfredi McKinley
Virginia Bar No. 20647                            Pa. ID No. 320002
*Application for pro hac vice pending*            COHEN & GRIGSBY, P.C.
H. Jay Spiegel & Associates                       625 Liberty Avenue
P.O. Box 11                                       Pittsburgh, PA 15222-3152
Mount Vernon, VA  22121                           Telephone:  (412) 297-4900
Telephone: (703) 619-0101                         Facsimile:  (412) 209-0672
Facsimile: (703) 619-0110                         E-mail:  cmckinley@cohenlaw.com
Email:  jayspiegel@aol.com

                                                  *Counsel for Plaintiff, American Textile*
                                                  *Company, Inc.*


Dated:   April  14, 2017