**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN TEXTILE COMPANY, INC., | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | No. 2:17-cv-00487-MRH |
| v. | ) | |
| | ) | |
| HOLLANDER SLEEP PRODUCTS, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**<u>PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM</u>**

MEYER, UNKOVIC & SCOTT LLP

David G. Oberdick
Pa. I.D. 47648
Nicholas J. Bell
Pa. I.D. 307782
Ashley L. Wilkinson
Pa. I.D. 320537

535 Smithfield Street, Suite 1300
Pittsburgh, PA  15222
(412) 456-2800
dgo@muslaw.com
njb@muslaw.com
alw@muslaw.com

H. JAY SPIEGEL & ASSOCIATES
H. Jay Spiegel
Virginia Bar No. 20647
Admitted *pro hac vice*

P.O. Box 11
Mount Vernon, VA   22121
(703) 619-0101
jayspiegel@aol.com

ATTORNEYS FOR PLAINTIFF

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ ii

**I.    INTRODUCTION** ...................................................................................................... 1

**II.   LEGAL STANDARD** ................................................................................................ 4

**III.  ARGUMENT** ............................................................................................................. 6

      A.    Hollander Has Not And Cannot Show Design Patent Infringement
           As A Matter Of Law Under The Ordinary Observer Test. ......................... 6

          1.    *Construction and Scope of the '920 Patent* ....................................... 8

          2.    *Application of the Ordinary Observer Test* ....................................... 14

      B.    In The Alternative, Hollander Fails To Plead Sufficient Facts For
           A Plausible Inference Of Direct Infringement. ......................................... 19

**IV.   CONCLUSION** ......................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934
(Fed. Cir. 2015) ................................................................................................... 5

*Am. Bev. Corp. v. Diageo N. Am., Inc.*, 936 F. Supp. 2d 555 (W.D. Pa. 2013) ................ 8

*Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927 (Fed. Cir. 2014) ..................... 7, 18

*Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67 F.2d 428 (6th Cir. 1933) ....... 10

*Asghari-Kamraini v. United Servs. Auto. Ass'n*, No. 2:15cv478, 2016 U.S. Dist.
LEXIS 48012 (E.D. Va. Mar. 22, 2016) ............................................................. 22, 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................. 4

*Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768 (N.D. Ill. 2016) ............................ 23

*Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241 (Fed. Cir. 2000) .................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 4

*Bluestone Innovations LLC v. Bulbrite Indus.*, No. 15-cv-5478-PJH, 2016 U.S. Dist.
LEXIS 51098 (N.D. Cal. Apr. 15, 2016) ............................................................... 5

*Colida v. Nokia, Inc.*, 347 F. App'x 568 (Fed. Cir. 2009) ................................................. 5

*Cotapaxi Custom Design & Mfg., LLC v. Corporate Edge, Inc.*, No. 06-5183 (JAG),
2007 U.S. Dist. LEXIS 73172 (D.N.J. Oct. 1, 2007) ................................................ 5

*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294 (Fed. Cir. 2010) .............................. 18

*Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir. 1998) ...................................... 8

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) .... 6, 7, 9, 17, 18, 20

*Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571 (Fed. Cir. 1995) ................................. 6, 8

*Fifth Mkt., Inc. v. CME Grp., Inc.*, No. 08-520 GMS, 2009 U.S. Dist. LEXIS
108776 (D. Del. May 14, 2009) ........................................................................ 23

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) .................................... 4

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113
(Fed. Cir. 1998) ................................................................................................ 6

*Gorham Co. v. White*, 81 U.S. 511 (1871)................................................................ 7

*Ill. Watch Case Co. v. Hingeco Mfg. Co*., 81 F.2d 41 (1st Cir. 1936) .............................. 9

*In re Mann*, 861 F.2d 1581 (Fed. Cir. 1988)................................................................ 8

*In re Zahn*, 617 F.2d 261 (C.C.P.A. 1980) ................................................................ 12

*Incom Corp. v. Walt Disney Co*., No. CV15-3011 PSG (MRWx), 2016 U.S. Dist. LEXIS 71319 (C.D. Cal. Feb. 4, 2016) ................................................................ 22

*Int'l Seaway Trading Corp. v. Walgreens Corp*., 589 F.3d 1233 (Fed. Cir. 2009)........... 18

*IP Commun. Solutions, LLC v. Viber Media (USA) Inc*., No. 16-134-GMS, 2017 U.S. Dist. LEXIS 51770 (D. Del. Apr. 5, 2017)................................................. 21

*Iron Gate Sec., Inc. v. Loew's Cos*., No. 15-cv-8814 (SAS), 2016 U.S. Dist. LEXIS 34061 (S.D.N.Y. Mar. 16, 2016) ................................................................ 22

*Juniper Networks, Inc. v. Palo Alto Networks, Inc*., 15 F. Supp. 3d 499 (D. Del. 2014) ............................................................................................. 6, 8

*Kellman v. Coca-Cola Co,* 280 F. Supp. 2d 670 (E.D. Mich. 2003) ................................ 5

*Keurig Inc. v. JBR Inc,* No. 11–11941–FDS, 2013 U.S. Dist. LEXIS 73845 (D. Mass. May 24, 2013) ............................................................................... 8

*Lee v. Dayton-Hudson Corp*., 838 F.2d 1186 (Fed. Cir. 1988) ...................................... 9

*Litton Sys., Inc. v. Whirlpool Corp*., 728 F.2d 1423 (Fed. Cir. 1984) .............................. 9

*Markman v. Westview Instruments, Inc,* 52 F.3d 967 (Fed. Cir. 1995), *aff'd* 516 U.S. 1007 (1995)................................................................................................... 6

*Metrokane, Inc. v. Wine Enthusiast*, 185 F. Supp. 2d 321 (S.D.N.Y. 2002) .................... 8

*Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc*., NO. 3:06-CV-995-K, 2009 U.S. Dist. LEXIS 20948 (N.D. Tex. Mar. 16, 2009) ......................................... 17

*MSA Prods. v. Nifty Home Prods*., 883 F. Supp. 2d 535 (D.N.J. 2012) ...................... 5, 6

*OddzOn Prods., Inc. v. Just Toys, Inc*., 122 F.3d 1396 (Fed. Cir. 1997)........................... 9

*Parker v. Kimberly-Clark Corp*., No. 11 C 565, 2012 U.S. Dist. LEXIS 2565 (N.D. Ill. Jan. 10, 2012) ............................................................................. 5, 17

iii

*RAH Color Techs. LLC v. Ricoh USA, Inc*., 194 F. Supp. 3d 346 (E.D. Pa. 2016) .......... 20

*Raindance Techs., Inc. v. 10x Genomics, Inc*., No. 15-152-RGA, 2016 U.S. Dist. LEXIS 33875 (D. Del. Mar. 4, 2016) ........................................................... 20, 21

*Richardson v. Stanley Works, Inc*., 597 F.3d 1288 (Fed. Cir. 2010) ................................. 9

*Richtek Tech. Corp. v. uPI Semiconductor Corp*., No. C 09-05659 WHA, 2016 U.S. Dist. LEXIS 57533  (N.D. Cal. Apr. 29, 2016) ........................................... 21

*SIPCO, LLC v. Streetline, Inc*., No. 16-830-RGA, 2017 U.S. Dist. LEXIS 7856 (D. Del. Jan. 20, 2017) ................................................................................................ 23

*Uniloc USA, Inc. v. Avaya Inc*., No. 6:15-cv-1168-JRG, 2016 U.S. Dist. LEXIS 181826 (E.D. Tex. May 13, 2016) ................................................................... 21

*Wing Shing Prods. (BVI) Co. v. Sunbeam, Prods. Inc.*, 665 F. Supp. 2d 357 (S.D.N.Y. 2009) .................................................................................................... 17

**Statutes**

35 U.S.C. § 171(a) ........................................................................................................ 8

35 U.S.C. § 271(a) ........................................................................................................ 6

**Rules**

Federal Rule of Civil Procedure 8(a)(2) ....................................................................... 19

Federal Rule of Civil Procedure 12(b)(6) ............................................................... 1, 4, 5

Plaintiff American Textile Company, Inc. ("ATC"), by and through its undersigned counsel, respectfully submits the following Memorandum in Support of Motion to Dismiss the Counterclaim of Defendant Hollander Sleep Products, LLC ("Hollander").

## I.      INTRODUCTION

ATC respectfully moves for dismissal of Hollander's Counterclaim with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for the following reasons: (1) ATC's product does not infringe Hollander's Patent as a matter of law under the ordinary observer test; or, alternatively, (2) Hollander fails to adequately plead an infringement claim because its Counterclaim contains nothing more than threadbare, conclusory allegations of infringement unsupported by facts giving rise to a plausible inference of infringement.

As set forth in Hollander's Counterclaim, Hollander alleges that ATC infringed its Design Patent No. D507,920, entitled "Pillow Covering" (the "'920 Patent"). The scope of the '920 Patent is set forth solely in its patent drawings – which address the ornamental design of a side panel or gusset for a pillow cover. This design has at least three distinguishing design characteristics: (1) an elliptical shape with rounded side corners or edges, (2) a cord or piping around the perimeter of the ellipse that has raised dimensions; and (3) the same cord or piping being continuous. Other Federal District Courts addressing analogous design patents have dismissed such claims with prejudice in the context of a Rule 12(b)(6) motion to dismiss and this Court can and should reach the same conclusion under the applicable "ordinary observer" standard. More directly, an ordinary observer, as a matter of law, would not be deceived into thinking ATC's product

is substantially the same as the claimed design because the overall appearances of the two designs are starkly different as to the above design characteristics.  More directly, a side-by-side comparison of the designs set forth at Paragraphs 10 and 14 of the Counterclaim (the ATC design is set forth first below) plainly show that the ATC side panel or gusset design (1) has sharp or pointed side corners or edges, (2) does not have a raised cord or piping around the perimeter of the side panel, and (3) does not have a continuous perimeter cord or piping:





FIG. 1

2

The perimeter cord or piping of the Hollander design is shown, in particular, at the ends of the pillow cover in Figure 5 of the '920 Patent:



FIG. 5

Therefore, Hollander's Counterclaim fails as a matter of law because Hollander cannot show any substantial similarity between the appearance of ATC's accused product and the claimed design. Dismissal of the Hollander Counterclaim, with prejudice, would also address the ATC request for a declaratory judgment of non-infringement.

In the alternative, Hollander's Counterclaim should be dismissed because it is comprised of nothing more than conclusory assertions and bald recitals of the legal elements of a patent infringement claim. Hollander's infringement allegations consist of boilerplate recitations of the legal standard for direct infringement. (*See* Answer & Countercl. [ECF No. 12], ¶¶ 14-15 ("ATC's products include at least the product depicted below ("the Infringing Products") . . . which "have an ornamental design of a pillow covering that, when viewed in its entirety, embodies the '920 patented design or a colorable imitation thereof, with eyes of an ordinary observer familiar with prior art.").) Hollander's nonspecific allegations avoid any discussion or application of the design characteristics discussed above, including avoidance of any allegations as to precisely

3

which design elements of ATC's product infringes upon Hollander's '920 Patent. This failure on the part of Hollander otherwise compels dismissal of the Counterclaim under current pleading standards in a patent infringement case.

## II.    LEGAL STANDARD

As is often recited, Federal Rule of Civil Procedure 12(b)(6) requires dismissal if a complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Stated differently: "[A]a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  To determine the sufficiency of a complaint pursuant to Rule 12(b)(6), the Court should first identify and disregard those allegations that are mere legal conclusions.  *See Iqbal*, 556 U.S. at 679. Next, the Court should accept as true any well-pleaded factual allegations, and then determine whether those facts plausibly give a right to relief.  *See id.*  The Court need not accept as true mere legal conclusions that are couched as factual allegations. *See id.* at 678 (emphasizing "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice to overcome motion to dismiss) (citation omitted).

This standard has direct and particular application to claims of patent infringement.    *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

"*Twombly* and *Iqbal* require that a complaint for patent infringement contain sufficient factual allegations such that a reasonable court could, assuming the allegations were true, conclude that the defendant infringed." *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 936 (Fed. Cir. 2015).[1]    In the context of a patent infringement claim, therefore, the Court can determine infringement of a design patent as a matter of law at the motion to dismiss stage. *See, e.g., MSA Prods. v. Nifty Home Prods.*, 883 F. Supp. 2d 535, 540 (D.N.J. 2012) (citing *Colida v. Nokia, Inc.*, 347 F. App'x 568, 569-70 (Fed. Cir. 2009) (affirming Rule 12(b)(6) dismissal of claim for infringement of cell phone design patents); *Cotapaxi Custom Design & Mfg., LLC v. Corporate Edge, Inc.*, No. 06-5183 (JAG), 2007 U.S. Dist. LEXIS 73172, at **5-6 (D.N.J. Oct. 1, 2007) (dismissing claim for infringement of design patent pursuant to Rule 12(b)(6)); *Kellman v. Coca-Cola Co.,* 280 F. Supp. 2d 670 (E.D. Mich. 2003) (dismissing the plaintiff's claim with prejudice for design patent infringement on a motion to dismiss)); *Parker v. Kimberly-Clark Corp.*, No. 11 C 565, 2012 U.S. Dist. LEXIS 2565, at **5-7 (N.D. Ill. Jan. 10, 2012) (granting motion to dismiss where one product had flat ends with sharp corners and the accused design had one rounded end and one heart shaped end).  At a minimum, dismissal is required where allegations of patent infringement do not satisfy the *Twombly* and *Iqbal* standards.  *Bluestone Innovations LLC v. Bulbrite Indus.*, No. 15-cv-5478-PJH, 2016 U.S. Dist. LEXIS 51098, at **8-10 (N.D. Cal. Apr. 15, 2016) (granting motion to dismiss when the complaint did not provide

---

[1] Patent litigation comes at "enormous expense."  *Forest Group, Inc. v. Bon Tool Co*., 590 F.3d 1295, 1304 (Fed. Cir. 2009).  Thus, it is especially important in patent cases that when the complaint shows that there is no entitlement to relief, that fact is "'exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Twombly*, 550 U.S. at 558 (citation omitted).

notice of how the accused allegedly infringed, or under which subsections of § 271 the plaintiff was alleging infringement).

## III.    ARGUMENT

A.    <u>Hollander Has Not And Cannot Show Design Patent Infringement As A Matter Of Law Under The Ordinary Observer Test.</u>

Determining infringement requires a two-step analysis: (1) construction of the patent claim and scope, and (2) comparison of the construed claim to the accused product. *Elmer v. ICC Fabricating, Inc*., 67 F.3d 1571, 1577 (Fed. Cir. 1995); *Juniper Networks, Inc. v. Palo Alto Networks, Inc*., 15 F. Supp. 3d 499, 510 (D. Del. 2014); *see also Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd* 516 U.S. 1007 (1995). A design patent is infringed by the unauthorized manufacture, use, or sale of the article embodying the patented design or any colorable imitation thereof. *See Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co*., 162 F.3d 1113, 1116-17 (Fed. Cir. 1998) (citing 35 U.S.C. § 271(a)). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.,* 212 F.3d 1241, 1247 (Fed. Cir. 2000).

As stated previously, this test has often been used at the motion to dismiss stage and other courts have dismissed patent infringement claims, including in particular claims of design patent infringement after application of this test. *See, e.g., MSA Prods*., 883 F. Supp. at 540 (citations omitted).

The sole test for determining whether a design patent has been infringed is the ordinary observer test where the ordinary observer is familiar with prior art. *Egyptian Goddess*, *Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). Infringement of the construed claim will be found "[i]f, in the eye of an ordinary observer, giving such

attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Id.* at 670 (quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)). In order to determine if an accused object infringes a design patent, courts must apply the following analysis:

> In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear "substantially the same" to the ordinary observer... . In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs substantially the same will benefit from a comparison of the claimed and accused design with the prior art.

*Id.* at 678.

There are thus two levels to a design patent infringement analysis. First, a level one analysis to determine if comparison to prior art is even necessary. *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 933 (Fed. Cir. 2014) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) ("In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer.").) Accordingly, consideration of prior art is not required in every case - only those in which the patented design and the accused design are "substantially the same." *Egyptian Goddess*, 543 F.3d at 678; *see also Anderson,* 570 F. App'x at 933 (affirming dismissal of a complaint for design patent infringement at judgment on the pleadings stage because a side-by-side comparison of the design patent images and the images of the accused products showed that they were

"plainly dissimilar."); *Keurig Inc. v. JBR Inc.,* No. 11–11941–FDS, 2013 U.S. Dist. LEXIS 73845, at *26 (D. Mass. May 24, 2013) (noting two products were fairly dissimilar to an ordinary observer and therefore did not consider prior art).

In the present case, the '920 Patent fails both levels of the design patent infringement analysis. First, a side-by-side comparison shows that the ATC design is plainly dissimilar. Second, this conclusion is reinforced by the prior art cited in the '920 Patent.[2]

> 1. *Construction and Scope of the '920 Patent*

The construction of a patent claim is a matter of law, which must be performed by the Court before the question of infringement can be reached. *Juniper,* 15 F. Supp. 3d at 510 (citing *Cybor Corp. v. FAS Techs.,* 138 F.3d 1448, 1454 (Fed. Cir. 1998)). The scope of design-patent protection is limited by the Patent Act to the "new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171(a). The design patent laws "were not intended to empower patent owners to harass competitors who are marketing devices which happen to incorporate parts whose shapes resemble insignificant physical details of the patent owner's products." *Metrokane, Inc. v. Wine Enthusiast*, 185 F. Supp. 2d 321, 328 (S.D.N.Y. 2002).

Design patents are limited to what is shown in the application drawings and are therefore very narrow in scope. *Am. Bev. Corp. v. Diageo N. Am., Inc*., 936 F. Supp. 2d 555, 586 (W.D. Pa. 2013) (citations omitted); *Elmer,* 67 F.3d at 1577; *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988) ("Design patents have almost no scope. The claim at

---

[2] *Performance Designed Prods. LLC v. Mad Catz, Inc*., No. 16cv629-GPC(RBB), 2016 U.S. Dist. LEXIS 84848, at **14-16 (S.D. Cal. June 29, 2016) (granting motion to dismiss claim for patent infringement upon finding the designs were plainly dissimilar but also considering prior art as a further basis no infringement could be found).

bar, as in all design [patent] cases, is limited to what is shown in the application drawings.")*. Similarly, design patents do not protect "structural or functional aspects" or "basic configuration[s]," *Lee v. Dayton-Hudson Corp*., 838 F.2d 1186, 1188 (Fed. Cir. 1988); "general design concept[s]," *OddzOn Prods., Inc. v. Just Toys, Inc*., 122 F.3d 1396, 1405 (Fed. Cir. 1997) or "essential characteristics" such as being "relatively thin" and "sufficiently small to be readily held in the hand," *Ill. Watch Case Co. v. Hingeco Mfg. Co*., 81 F.2d 41, 45 (1st Cir. 1936). In fact, where a design contains both functional and nonfunctional elements, the scope of the claim must be construed in order to identify the nonfunctional aspects of the design as shown in the patent. *Richardson v. Stanley Works, Inc*., 597 F.3d 1288, 1293-95 (Fed. Cir. 2010); *OddzOn*, 122 F.3d at 1405.

In respect to the Hollander '920 Patent, the side panels or gussets do provide function to the pillow cover. Specifically, the gusset in a pillow cover provides additional height and/or strength to a pillow. *See* https://www.merriam-webster.com/dictionary/gusset (defining "gusset" as "a piece of cloth ... that is sewn into something ... to make it wider or stronger."). Thus, the relative height and length of the side panel relate to functional considerations. More broadly, the general concept of a side panel or gusset is not protected by the '920 Patent. At the same time, ATC acknowledges that the ornamental and raised cord or piping around the side panel or gusset of the '920 Patent is non-functional.

Prior art similarly reinforces the narrow scope of a design patent. *See Egyptian Goddess*, 543 F.3d at 679. Where prior art is crowded and close to the claimed design, the scope of coverage to be afforded to the patent is very narrow. *Id.* (citing *Litton Sys.,*

*Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984); *Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67 F.2d 428, 430 (6th Cir. 1933)).

The sole claim of the '920 Patent is "[t]he ornamental design for a pillow covering, as shown and described" - with the claimed design depicted in five figures, as follows:





FIG. 3



FIG. 4



FIG. 5



Figures 2 and 3 of the '920 Patent show and describe paneled or gusseted ends of a pillow cover in which (i) the panel or gusset is elliptical with rounded side or edge corners, and (ii) a continuous piping or cord around the perimeter of the panel or gusset. As noted above, Figure 5 of the '920 Patent shows and describes that the perimeter cord or piping is raised from the pillow cover and gives a dimensional height to the pillow cover. In other words, when viewed from the plain ends of the pillow cover, the perimeter cord or piping around the side panel or gusset is visible as having a dimensional height.

Importantly, and as illustrated in Figures 2-5 of the '920 Patent, the top and bottom profiles of the pillow cover are shown in dashed lines and the perimeter cord or piping gusset is shown in solid lines. The '920 Patent states that "[t]he broken lines shown in the drawings are for illustration purposes only and form no part of the design sought to be patented." Thus, the top and bottom profiles are not part of the claimed design. *See In re Zahn,* 617 F.2d 261, 266 (C.C.P.A. 1980) ("An article may well have portions which are immaterial to the design claimed.").

These design characteristics and distinctions are reinforced by the prior art patents cited in the '920 Patent.  This prior art clearly shows that pillow coverings having a general elliptical shape for a side panel or gusset – with pointed side or edge corners and without perimeter piping - were well known at the time of the '920 Patent.[3]  By way of specific example, Figure 1 of the U.S. Patent No. 2,029,608, which was cited by the Examiner in the review of the '920 Patent, shows a side panel or gusset for a pillow – with pointed side or edge corners and without perimeter piping:

---

[3] The prior art patents cited in the '920 Patent are attached at Exhibit 4 to the ATC Complaint.



Similarly, Figure 1 of U.S. Patent No. 2,217,999, which also was cited by the Examiner in the review of the '920 Patent, similarly shows a side panel or gusset for a pillowcase closure – with pointed side or edge corners and without perimeter piping:



Finally, Figure 1 of U.S. Patent No. 3,148,389, which was cited by the Examiner in the review of the '920 Patent as well, likewise shows a side panel or gusset for a pillow – with pointed side or edge corners and without perimeter piping:



Thus, the general elliptical shape of a pillowcase side panel or gusset would not constitute a difference to which the ordinary observer would be drawn.  Instead, the scope and design characteristics of the '920 Patent to which an ordinary observer would be drawn include (1) an elliptical shape with rounded side corners or edges, (2) a cord or piping around the perimeter of the ellipse that has raised dimensions; and (3) the same cord or piping being continuous.

2.    *Application of the Ordinary Observer Test*

Even without consideration of prior art, a side-by-side comparison of the accused ATC design with the claimed design of the '920 Patent clearly shows the dissimilarities and confirms that no ordinary observer would be deceived into believing the accused product is substantially the same as the design properly claimed in the '920 Patent. Again, the '920 Patent scope has at least three distinguishing design characteristics that are NOT present in the ATC design:  (1) an elliptical shape with rounded side corners or edges, (2) a cord or piping around the perimeter of the ellipse that has raised dimensions; and (3) the same cord or piping being continuous.

The first distinguishing characteristic of the designs – rounded vs. sharp side corners or edges for the side panel or gusset are directly shown in the Figures attached at Paragraphs 10 and 14 of the Counterclaim:



FIG. 1

Figures 2-5 of the '920 Patent describe and confirm the continuous cord or piping that surrounds the perimeter of the side panel or gusset.  Figure 5 of the '920 Patent, in particular, shows a perimeter cord or piping a raised dimension and height:

FIG. 2



FIG. 4



FIG. 5



This same ornamental perimeter cord or piping – with raised height does <u>not</u> exist in the ATC design.

ATC therefore respectfully submits that, as a matter of law, the designs are plainly dissimilar to the naked eye, and no ordinary observer would confuse the two designs.  More directly, even without considering the limitations created by prior art, the shape and characteristics of the designs are sufficient to deem them plainly dissimilar. *See Parker,* 2012 U.S. Dist. LEXIS 2565, at **5-7 (no infringement where the claimed design had flat ends with sharp corners and the accused design had one rounded end and one heart shaped end).

The second level analysis accounts for prior art in less obvious cases when two designs are not "plainly dissimilar."  *Wing Shing Prods. (BVI) Co. v. Sunbeam, Prods. Inc.*, 665 F. Supp. 2d 357, 362 (S.D.N.Y. 2009), *aff'd* 374 F. App'x 956 (Fed. Cir. 2010). Although the subject designs are plainly dissimilar under our facts as shown above, a comparison with prior art is warranted for purposes of thoroughness as further evidence of non-infringement.  *See, e.g., id.* at 363 (although the court recognized "manifest differences in the overall appearance" of the patented design and the accused design, it looked "to the prior art for context"); *Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc*., NO. 3:06-CV-995-K, 2009 U.S. Dist. LEXIS 20948, at **17-19 (N.D. Tex. Mar. 16, 2009) (although the court was satisfied that two of the asserted patents and accused designs were readily distinguishable to an ordinary observer, the court proceeded with a full analysis comparing the claimed and accused designs with the prior art).

To the extent even necessary, the second level analysis applies the ordinary observer test pronounced in *Egyptian Goddess*, to determine whether "an ordinary

observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citing *Egyptian Goddess,* 543 F.3d at 678). This requires comparing the entirety of the patented design with the alleged prior art. *Int'l Seaway Trading Corp. v. Walgreens Corp*., 589 F.3d 1233, 1241 (Fed. Cir. 2009).

Notably, where there are many examples of similar prior art designs, the differences between the claimed and accused designs that may not be as noticeable in the abstract can become significant to the ordinary observer who is conversant with the prior art. *Egyptian Goddess*, 543 F.3d at 678. Under the ordinary observer test, the similarity between the accused device and the patented design must stem from the features that distinguish the patented invention from the prior art. Furthermore, the *Egyptian Goddess* court noted that the ordinary observer test shall serve to restrict unduly broad assertions of design patent scope by ensuring that a design that merely embodies or is substantially similar to prior art designs is not found to infringe. *Id*.

When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. *Id*. at 676. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer. *Id.* Thus, a party alleging infringement must explain how or why an ordinary observer would be deceived into thinking that the accused product is the same as the patented design, and the accuser's complaint for design patent infringement cannot survive on merely conclusory allegations. *Anderson*, 570 F. App'x at 934.

18

As discussed above in Section A-1, the crowded and close prior art patents cited in the '920 Patent highlight the clear distinctions between the '920 Patent and the accused design.  In particular, the design characteristics of the ATC pillowcase design are in the public domain and, indeed, resemble the cited prior art.  Once again, these design characteristics are: (1) sharp or pointed side corners or edges for the side panel or gusset of a pillowcase cover, and (2) the absence of a continuous and ornamental raised cord or piping around the perimeter of the side panel or gusset.  Stated differently, the ATC design does NOT incorporate the possible points of novelty of the '920 Patent.[4]

Accordingly, in view of the high degree of sensitivity of the ordinary observer who is familiar with the crowded, close prior art, and the substantial difference in ornamental features and overall appearance between the accused design and the '920 Patent, there is only one conclusion - that no ordinary observer who is familiar with the prior art could mistake the accused design for the claimed design.

**B.    In The Alternative, Hollander Fails To Plead Sufficient Facts For A Plausible Inference Of Direct Infringement.**

A pleader must plead a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  As the United States Supreme Court

---

[4] Notably, while the present Motion to Dismiss is not directed to invalidity of the '920 Patent, Figure 1 of U.S. Patent No. 3,924,283, cited of record in the '920 Patent and referenced in Exhibit 4 of the Complaint, shows a cushion cover with side panels having rounded edges and raised, continuous piping around the side panel:



At a minimum, this further narrows the scope of the '920 Patent, and ATC otherwise reserves all rights to otherwise challenge the validity of the '920 Patent in its entirety.

has repeatedly stated, compliance with Rule 8(a) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.  In the present case, Hollander has failed to meet this standard and, indeed, has completely failed to identify the novel and distinguishing characteristics of its design – despite the issues presented by ATC's own Complaint and request for declaratory judgment.[5]  To be clear, ATC submits that this Court can otherwise discern these characteristics through a side-by-side comparisons of the designs.  To the extent that any doubt remains, however, Hollander's claim of infringement is deficient.

As emphasized in *Raindance Techs., Inc. v. 10x Genomics, Inc*., No. 15-152-RGA, 2016 U.S. Dist. LEXIS 33875, at *7 (D. Del. Mar. 4, 2016), the standard for pleading direct patent infringement has become more stringent since the 2015 amendments to the Federal Rules abrogated Form 18.  District courts have repeatedly found that Form 18's paradigm for pleading direct infringement claims "no longer provides the proper measure for the sufficiency of a complaint and that the *Twombly* and *Iqbal* pleading standards apply."  *RAH Color Techs. LLC v. Ricoh USA,*

---

[5] Hollander has made no effort to address the design distinctions set forth in the ATC Complaint, nor has Hollander in any way identified how the ATC design infringes any novel aspects of the '920 Patent when viewed in light of the prior art as required by *Egyptian Goddess* cited *supra*, including the prior art of record in the '920 patent as well as the prior art cited in Exhibit 5 of the Complaint, all of which were known to Hollander when they prepared their Counterclaim.  Figure 7 in U.S. Patent No. 3,530,020 (Liebermann), in particular, shows a pillow covers with an elliptical side panel – which would fully anticipate and invalidate the '920 Patent if it were construed to cover such a design.  "[T]hat which if later infringes, anticipates if earlier."  *Peters v. Active Manufacturing Co.,* 129 U.S. 530 (1889).  Due to Hollander's continuing efforts to press its infringement claim despite design distinctions and the impact of prior art, ATC reserves all rights to have this case declared as "exceptional" and seek a recovery of legal fees and costs from Hollander.

*Inc*., 194 F. Supp. 3d 346, 352 (E.D. Pa. 2016) (citing various decisions and finding it just to "abandon the Form 18 pleading standard at this juncture" and applying "*Twombly/Iqbal's* standard to a pleading filed after the amendments took effect is 'practicable' and necessary for the resolution of inconsistent case law"); *see IP Commun. Solutions, LLC v. Viber Media (USA) Inc*., No. 16-134-GMS, 2017 U.S. Dist. LEXIS 51770, at *5 n.1 (D. Del. Apr. 5, 2017) (citing various cases and noting under the new Rules, allegations of direct infringement will be subject to the pleading standards established by *Twombly* and *Iqbal*, requiring plaintiffs to demonstrate a plausible claim for relief); *Richtek Tech. Corp. v. uPI Semiconductor Corp*., No. C 09-05659 WHA, 2016 U.S. Dist. LEXIS 57533, at *7  (N.D. Cal. Apr. 29, 2016) (stating that because Rule 84 [Form 18] has been abrogated, the Federal Circuit's decision regarding the pleading standard set forth in Form 18 no longer applies).

Since the abrogation of Form 18, courts routinely require plaintiffs to allege facts sufficient to support a "plausible" claim under the standards set forth in *Iqbal* and *Twombly*.  *See, e.g., Raindance*, 2016 U.S. Dist. LEXIS 33875, at **1-2 (dismissing improvidently pled 35-page complaint after emphasizing that to survive dismissal, plaintiffs must, at minimum, explain what "Defendant[s] do to infringe" asserted claims of the patents-in-suit, and "relate . . . their factual assertions with . . . the asserted claims."); *Uniloc USA, Inc. v. Avaya Inc*., No. 6:15-cv-1168-JRG, 2016 U.S. Dist. LEXIS 181826, at **10-12 (E.D. Tex. May 13, 2016) (holding plaintiff stated claim for direct infringement by identifying with specificity representative claims from each utility patent-in-suit that were allegedly infringed, identifying by name the accused products, describing the accused functionality within such products, and providing descriptive

illustrations of these products and the accused functionality); *Iron Gate Sec., Inc. v. Loew's Cos*., No. 15-cv-8814 (SAS), 2016 U.S. Dist. LEXIS 34061, at *3 (S.D.N.Y. Mar. 16, 2016) ("Allegations that plead that 'a specific product[] allegedly infringes [the] patent by virtue of certain specific characteristics,' met the *Iqbal* plausibility standard." (citation omitted)); *Incom Corp. v. Walt Disney Co*., No. CV15-3011 PSG (MRWx), 2016 U.S. Dist. LEXIS 71319, at *3 (C.D. Cal. Feb. 4, 2016) (holding that the plaintiff stated plausible claim for direct infringement of utility patent by specifically identifying the defendants' products and alleging that they perform same unique function as the plaintiff's patented system).

Hollander's sparse allegations of infringement are insufficient to satisfy this standard. Indeed, Hollander's Counterclaim lacks critical facts necessary to plead the requisite elements of infringement. First, Hollander fails to adequately identify the product and the attributes of the accused product with requisite specificity. (*See* Answer & Countercl., ¶¶ 14-15 (alleging ATC's products include "at least the product depicted below" and that ATC's pillow covering, "when viewed in its entirety, embodies the '920 patented design or a colorable imitation thereof").) *See Asghari-Kamraini v. United Servs. Auto. Ass'n*, No. 2:15cv478, 2016 U.S. Dist. LEXIS 48012, at **3-4 (E.D. Va. Mar. 22, 2016) (dismissing infringement claim because complaint failed to identify which features of accused product correspond to patent-in-suit and failed to identify how allegedly infringing features infringed).

Second, Hollander's claims of infringement should be dismissed because Hollander fails to plead facts explaining precisely *how* the accused design infringes any claims of the '920 Patent or relate its factual assertions regarding the accused product

with the claimed design so as to make it clear how the accused product contains the patented design.  Instead, Hollander baldly alleges that the accused product infringes and that ATC "is or has been manufacturing, importing, advertising, marketing, selling, and/or offering for sale" the accused product.  (*See* Answer & Countercl., ¶ 19.)  This leaves both the Court and ATC to speculate regarding how the product identified allegedly infringes the '920 Patent.  Such vague allegations do not satisfy the governing plausibility standard for pleading[6] and have in fact been held insufficient on numerous occasions.  *See SIPCO, LLC v. Streetline, Inc*., No. 16-830-RGA, 2017 U.S. Dist. LEXIS 7856, at *3 (D. Del. Jan. 20, 2017) (emphasizing that identification of patents, saying defendant "sell[s] some products," and that "sales of your products infringe ou[r] patents" are "insufficient to plausibly allege patent infringement"); *Asghari-Kamraini*, 2016 U.S. Dist. LEXIS 48012, at **3-4.

The Court should dismiss the Counterclaim as Hollander's inadequate pleading leaves both ATC and this Court to speculate regarding how ATC's product infringes the '920 Patent.  Under well-established pleading standards, this information is critical to state a plausible claim and ATC should not be required to defend against a vague claim that falls far short of this Court's mandated pleading standards.  *See, e.g., Atlas IP, LLC v. Exelon Corp*., 189 F. Supp. 3d 768, 779 (N.D. Ill. 2016) (dismissing with prejudice improvidently pled patent infringement complaint because "[Plaintiff] was certainly

---

[6] Indeed, such vague allegations regarding accused products were found to be inadequate even under the now-abolished, but more liberal, pleading standards of Form 18 because such allegations failed to put defendants on notice of what products were at issue and how those products could have infringed. *See, e.g., Fifth Mkt., Inc. v. CME Grp., Inc*., No. 08-520 GMS, 2009 U.S. Dist. LEXIS 108776, at *3 (D. Del. May 14, 2009) (granting motion to dismiss because plaintiff defined the allegedly infringing products and methods as those "covered by the claims of the asserted patents" and failed to provide any further detail regarding how any products infringed the asserted patents).

familiar with its own patent and what an infringing product would look like when it filed this lawsuit" yet failed to adequately plead that Defendants' products infringed, and, thus it appeared Plaintiff could not do so).

## IV.    CONCLUSION

For the foregoing reasons, ATC respectfully request that the Court dismiss Hollander's Counterclaim with prejudice.

MEYER, UNKOVIC & SCOTT LLP

By: */s/ David G. Oberdick*
     David G. Oberdick
     Pa. I.D. 47648

     Nicholas J. Bell
     Pa. I.D. 307782

     Ashley L. Wilkinson
     Pa. I.D. 320537

     Meyer, Unkovic & Scott LLP
     535 Smithfield Street, Suite 1300
     Pittsburgh, PA  15222
     (412) 456-2800
     dgo@muslaw.com
     njb@muslaw.com
     alw@muslaw.com

H. JAY SPIEGEL & ASSOCIATES

     H. Jay Spiegel
     Virginia Bar No. 20647
     Admitted *pro hac vice*

     P.O. Box 11
     Mount Vernon, VA   22121
     (703) 619-0101
     jayspiegel@aol.com

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2017, a true and correct copy of the foregoing

was filed electronically.


MEYER, UNKOVIC & SCOTT LLP


*/s/ David G. Oberdick*
David G. Oberdick, Esquire